UNITED STATES of America, Plaintiff-Appellee,

v.

Denny GAY, Defendant-Appellant.

No. 00-14729

Non-Argument Calendar.

United States Court of Appeals,

Eleventh Circuit.

May 18, 2001.

Appeal from the United States District Court for the Middle District of Georgia. (No. 97-00011-CR-2-WLS-6), W. Louis Sands, Chief Judge.

Before ANDERSON, Chief Judge, and HULL and FAY, Circuit Judges.

PER CURIAM:

Denny Gay appeals his 162-month sentence resulting from his plea of guilty to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On appeal, Gay argues that the district court erred in refusing to hold an evidentiary hearing regarding the factual circumstances of his prior escape conviction. Gay also argues that the district court erred in treating him as a career offender using his prior escape conviction as one of the qualifying criteria. We affirm.

We review a district court's denial of an evidentiary hearing for abuse of discretion. *United States v. Dynalectric Co.,* 859 F.2d 1559, 1580 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989). We review a district court's factual findings for clear error and its application of the guidelines to those facts *de novo. United States v. Trujillo,* 146 F.3d 838, 847 (11th Cir.1998).

Upon review of the presentence investigation report and the sentencing transcript, and upon consideration of the briefs of the parties, we find no reversible error.

Denny Gay pled guilty to a superseding information that charged him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). According to the Presentence Investigation, an investigation was conducted by several state and federal drug enforcement agencies, targeting a methamphetamine trafficking organization responsible for the distribution of the drug from Florida to Georgia. The investigation revealed that Denny Gay, among other individuals, served as a distributor of the drug. In this position, Gay obtained quantities of the drug, used some of the drug personally, and sold a portion of the drugs to other people. While no contraband was seized as a result of this investigation, Gay

and the government stipulated that Gay was accountable for at least 20 grams but less than 40 grams of a mixture containing methamphetamine.

Prior to Gay's sentencing hearing, the probation department prepared a PSI, recommending that he be classified as a career offender with an elevated base offense level of 32, rather than his original base offense level of 18. Gay objected to this classification and argued that, because the underlying facts of his prior escape conviction involved walking away from a non-secure community corrections facility, the offense did not constitute a violent crime. Gay also requested an evidentiary hearing to present evidence regarding the nature and circumstances of the escape.

After considering cases from other circuits as well as looking at the language of U.S.S.G. § 4B1.2(a)(2), the district court found that the escape was a "technical" one in that Gay had not "busted out in the sense with blazed guns and fighting people ... or ... even threatened or did anything to anyone." Nevertheless, the court determined that an escape conviction is an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," and, as such, overruled Gay's objection. The court also concluded that, because the government was not contesting the fact that the escape charge was based upon Gay leaving a community corrections center without authorization, and because the law does not support a broad review of the circumstances of the escape, it would not grant Gay's motion for an evidentiary hearing.

Gay argues that the district court erred in refusing to hold an evidentiary hearing regarding the factual circumstances of his prior escape conviction. Gay asserts that the court mistakenly believed that it was precluded from holding such a hearing and believing that a hearing would be futile because all escapes inherently possess the "serious potential risk of physical injury to another" as contemplated by U.S.S.G. § 4B1.2(a)(2). Gay states that the court should not have relied on the holdings of other circuit courts in deciding whether escape constitutes a crime of violence because the courts did not have the same access to the underlying facts. Citing to a footnote in *Walker v. Mortham,* 158 F.3d 1177 (11th Cir.1998), *cert. denied,* 528 U.S. 809, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999), which examined the presumption existing in civil rights cases, Gay also asserts that the court should have treated his case like an employment discrimination claim and allowed him to rebut the presumption that escape constitutes a crime of violence.

In response, the government argues that no factual dispute existed, as the government did not challenge the PSI's description of the escape as a "walk-away" from a diversion center without authority, and, as such, that Gay has not shown how he was harmed by the court's refusal to conduct an evidentiary hearing.

The government also asserts that, because this Court has held that courts should only look at the elements of an offense in determining whether an underlying conviction qualifies as a crime of violence for purposes of classifying a defendant as a career offender, the district court was prohibited from reviewing the underlying facts of the escape conviction.

As we have stated, a district court may only inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment, and then may only examine easily produced and evaluated court documents, including the judgment of conviction, charging papers, plea agreement, presentence report, and findings of the sentencing judge. *United States v. Spell,* 44 F.3d 936, 939 (11th Cir.1995). If no ambiguities exist, the guidelines prohibit the district court from reviewing the underlying facts of a conviction to determine whether it is a crime of violence for career offender purposes. *United States v. Rucker,* 171 F.3d 1359, 1362 (11th Cir.), *cert. denied,* 528 U.S. 976, 120 S.Ct. 426, 145 L.Ed.2d 333 (1999).

Gay was convicted of felony escape, in violation of O.C.G.A. § 16-10-52, which provides that a person commits the offense of escape when he or she is confined for a variety of reasons and "intentionally escapes from lawful custody or from any lawful place of lawful confinement," or "intentionally fails to return as instructed to lawful custody." O.C.G.A. § 16-10-52(a) (1982-2000). As this statute is not ambiguous on its face, the district court did not abuse its discretion when it declined to hold an evidentiary hearing on the underlying facts of the escape conviction. Regardless, the court and both parties agreed that the underlying facts involved a situation where Gay walked away from a diversion facility in a non-violent manner, and Gay failed to establish how any further review of "easily produced and evaluated court documents" would produce a different ruling. As such, the court did not abuse its discretion when it refused to conduct an evidentiary hearing on the prior escape conviction.

Gay also argues that the district court erred in treating him as a career offender by using his escape conviction as one of the qualifying criteria. Citing to no authority, Gay asserts that the district court unjustly decided that the offense of escape creates the potential risk of injury when so many other offenses also may possess an equal degree of danger, and that the court unfairly placed all escape situations into the same category. Gay points to the separate treatment of different types of escapes in U.S.S.G. § 2P1.1(b), as evidence that the guidelines acknowledge a difference between various types of escape. Gay admits that other circuits have found that the offense of escape presents a potential risk of injury to others, but argues that these

opinions are distinguishable because the courts either looked at the offense of escape in the abstract or the offenses involved escapes from secure federal facilities. Finally, Gay argues that his escape did not fit within the "heartland" of the guidelines' intent.

In response, the government agrees that this Court has not yet considered whether an escape is a crime of violence as defined by U.S.S.G. § 4B1.2(a)(ii). The government also acknowledges that the crime of escape for which Gay was convicted did not have the use of force or threatened use of force as an element of the offense. It argues, however, that the reasoning of all of the other circuits, which have addressed this issue and concluded that escape does present the risk of physical injury to others and falls within the definition of a violent offense, is sound and should be followed by this Court.

Pursuant to § 4B1.1, a defendant qualifies as a career offender if (1) he is at least 18 years old, (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense, and (3) he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. This provision is interpreted strictly, and the government must demonstrate all three elements by a preponderance of the evidence. *Spell,* 44 F.3d at 938.

As both parties agree that Gay was over age 18 when convicted and that the instant offense and Gay's prior burglary conviction are qualified felonies, the issue before this Court is whether Gay's prior escape conviction constitutes a crime of violence justifying career offender status. A crime of violence, as used in § 4B1.1, is defined by the guidelines as an offense punishable by imprisonment exceeding one year that involves the use or threatened use of physical force against another person or an offense that is "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

While this Court has not decided whether escape is a crime of violence under § 4B1.2(a), every other circuit that has applied this analysis has determined that escape does involve conduct that "presents a serious potential risk of physical injury to another." The Fourth Circuit, in *United States v. Dickerson,* 77 F.3d 774, 776-77 (4th Cir.), *cert. denied,* 519 U.S. 843, 117 S.Ct. 126, 136 L.Ed.2d 76 (1996), in looking at whether an attempted escape from a federal maximum security prison constituted a crime of violence under the career offender provision, determined that it did not involve the use of physical force and did not constitute one of the specifically named crimes of violence in § 4B1.2 or its accompanying commentary, but that, by its nature, the offense presented a potential risk of violence. *Id.* Looking at escape in the "abstract," the court reasoned

that even an escape by stealth presented this risk because, "the escapee, intent on his goal of escaping, faces the decision of whether to dispel the interference or yield to it." *Id.* at 777.

Similarly, the Tenth Circuit in *United States v. Mitchell,* 113 F.3d 1528, 1532-33 (10th Cir.1997), *cert. denied,* 522 U.S. 1063, 118 S.Ct. 726, 139 L.Ed.2d 665 (1998), in looking at prior escapes that were "nonviolent walk-aways" from unsecured correctional facilities, reaffirmed its holding in *United States v. Gosling,* 39 F.3d 1140, 1142 (10th Cir.1994), that regardless of the facts underlying a particular escape, a defendant's escape conviction "by its nature present[s] a serious potential risk of physical injury to another." In reaching its holding, the court clarified that it did not look to the underlying facts of the conviction, but rather at the "expressly charged conduct." The court in *Mitchell,* citing to *Gosling,* 39 F.3d at 1142, reasoned that:

> [E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so ... Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*Mitchell,* 113 F.3d at 1533.

Following this line of cases, the Sixth Circuit, in *United States v. Harris,* 165 F.3d 1062, 1068 (6th Cir.1999), and the Fifth Circuit, in *United States v. Ruiz,* 180 F.3d 675, 676-77 (5th Cir.1999), have held that the crime of escape, by its nature, presents a serious potential risk of physical injury. In *Ruiz,* the Fifth Circuit also looked at a defendant who walked away from a prison camp where no physical barriers prevented the escape and no guards were armed, and who asked the court to look at the underlying facts. The court, nevertheless, found the reasoning of the Fourth, Sixth, and Tenth Circuits to be persuasive and concluded that the conduct constituted a crime of violence under § 4B1.2. *Ruiz,* 180 F.3d at 676-77.

Most recently, the Eighth Circuit followed this reasoning and held in *United States v. Nation,* 243 F.3d 467 (8th Cir.2001), that every escape, even a so-called "walkaway" escape, involves a potential risk of injury to others, and that escape categorically is a crime of violence as defined in U.S.S.G. § 4B1.2. While the court acknowledged that the term "conduct" in § 4B1.2(a)(2) could suggest an examination of the underlying facts of a particular offense, the court determined that the guidelines' first application note, which directs the court to look at the "nature" of an offense, was controlling and reasoned that "[e]ven the most peaceful escape cannot eliminate the potential for violent conflict when the authorities attempt to recapture the escapee." *Id.*

We agree with the reasoning of these courts and now hold that a prior escape conviction qualifies as a "crime of violence" under the career offender guideline. While Gay is correct in stating that U.S.S.G. § 2P1.1(b), recognizes specific characteristics of escape, this distinction is not applicable to the separate and distinct definition of "crime of violence" in U.S.S.G. § 4B1.2(a). In addition, while this Court has determined that the commentary to the guidelines precludes a purely categorical approach to determining whether a prior conviction is a crime of violence within the § 4B1.2 career criminal guideline, we have held that "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." *Spell,* 44 F.3d at 939. Because the offense of escape does not contain such ambiguities and does present the potential risk of violence, even when it involves a "walk-away" from unsecured correctional facilities, the district court did not err in holding that the escape conviction qualified as a "crime of violence" under the career offender guideline.

AFFIRMED.